## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **VER TECHNOLOGIES HOLDCO LLC, *et al.*,**[1] | : | **Case No. 18-10834 (KG)** |
| | : | |
| **Debtors** | : | **(Jointly Administered)** |
| | | **(D. I. 995)** |

## MEMORANDUM ORDER

1.  On July 26, 2018, the Court entered an Order confirming the Fourth Amended Joint Chapter 11 Plan of VER Technologies Holdco LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). Debtors, Production Resource Group, Inc. and its subsidiary Production Resource Group, L.L.C. ("PRG"), through the merger effectuated by the Plan, have moved, pursuant to 11 U.S.C. § 105(d), 524 and 1141 (the "Bankruptcy Code") and Rules 1015(c), 3020(d) and 9007 of the Rules of Bankruptcy Procedure (the "Rules") and Articles IX, X and XII of the Plan, seeking to disallow and discharge the claim of Sergeo Gomez ("Mr. Gomez") and enforce the Plan's release and injunctive provisions, and also asking the Court to impose sanctions against Mr. Gomez.

2.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1334 and the Plan provides for the Court's continuing jurisdiction.[2]   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The proceeding is core pursuant to 28 U.S.C. § 157(b).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  VER Technologies HoldCo LLC (7239); CPV Europe Investments LLC (2533); FAAST Leasing California, LLC (7857); Full Throttle Films, LLC (0487); Maxwell Bay Holdings LLC (3433); Revolution Display, LLC (6711); VER Finco, LLC (5625); VER Technologies LLC (7501); and VER Technologies MidCo LLC (7482).

[2] The Plan provides in Article X.12-13 that the Court has retained jurisdiction to "issue injunctions and implement other orders . . . to refrain interference by any entity with enforcement of the Plan . . . ."

3.  Mr. Gomez began working for Debtors on July 30, 2014.  He went on medical leave beginning in 2016 and took an extended and indefinite leave in January 2017.  In January 2018, Mr. Gomez advised Debtors that he could return to work with restrictions.  Mr. Gomez claims that despite his efforts Debtors refused to rehire him.  He filed his complaint in California state court (the "State Court Case") on February 6, 2019, alleging, among other issues, discrimination and wrongful termination of employment.  Debtors filed a demurrer seeking to dismiss the State Court Case on April 17, 2019.  The State Court judge declined to grant the demurrer.

4.  The following dates and actions are germane:

| April 5, 2018 | Bankruptcy case began |
|---|---|
| April 12, 2018 | Debtors sent Mr. Gomez a Notice of Commencement |
| May 9, 2018 | Debtors sent Mr. Gomez a Notice of Deadlines for the filing of proofs of claim (the "Bar Date Notice") |

The Bar Date Notice established June 8, 2018, at 5:00 p.m., as the deadline to file a proof of claim and further advised that any person or entity whose claim was not listed in Debtor's schedules was obligated to file a proof of claim.  If the person or entity did not file the proof of claim, the Bar Date Notice provided that such person or entity would not receive any distribution.  The Debtors followed the Notice of Bar Date by sending to Mr. Gomez the Notice of Disclosure Statement Hearing and Notice of Hearing to Consider Confirmation of the Chapter 11 Plan.  Debtors submitted Affidavits of Service evidencing service on Mr. Gomez.

5.  The Court confirmed the Plan on July 26, 2018.  The Plan became effective on August 21, 2018.  The Plan did the following:  (1) discharged claims (Article IX.B.); (2) fully released Debtors and PRG from claims and lawsuits (Article IX.D); (3) enjoined individuals and entities from pursuing the released parties (Article IX.F); and (4) provided for the Court to retain jurisdiction to resolve disputes and restrain interference.

6.  The definition of a "claim" is very broad and is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." Bankruptcy Code § 101(5). The cases hold that a party can have a bankruptcy claim without having a cause of action on the claim, *Kilbarr Corp. v. G.S.A. (In re Remington Rand Corp.)*, 836 F.2d 825, 832 (3d Cir. 1988); or even if the action is not yet enforceable, *Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998). Finally, in *In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010), the Third Circuit Court of Appeals ruled that claims arise when a person is exposed to conduct which gives a right to payment "even though the injury manifested after the reorganization." Also, the Court will apply the "fair contemplation" test which applies reasonable due diligence. The claim arises when a creditor could see that a claim exists by exercising reasonable due diligence.

7.  *In re City of Detroit*, 548 B.R. 748, 763 (Bankr. E.D. Mich. 2010), is particularly important. There, it was recommended that a Detroit policewoman be dismissed. She appealed and participated in several arbitration hearings. The City of Detroit filed for bankruptcy before the arbitrator issued a decision and it was only after the bankruptcy filing that the arbitrator affirmed the dismissal decision. The policewoman argued that her claim arose only when the arbitrator ruled, and that ruling was post-petition. The bankruptcy court found that a bankruptcy claim was within her fair contemplation. Although the policewoman could not know that the arbitrator would affirm the termination decision, the bankruptcy court held that a creditor does not have to know that all elements of a claim will be satisfied in order to have a claim for bankruptcy purposes. The court thus ruled that the individual "may not have known for certain that she would have an actionable claim against the City, but certainty is not the standard. The standard is whether the contingent claim was within [the policewoman's] fair contemplation." *Id.* At 767.

8.  In the case at hand, Mr. Gomez was not being rehired and expressed in February 2018 (before the bankruptcy) fear that Debtors would not reinstate him. This was before the bankruptcy case was even filed. It is clear that Mr. Gomez had "fair contemplation" that

he was being terminated before the bankruptcy began and well before the Bar Date Notice. Yet he did not file a proof of claim.

9. Article 1X.B of the Plan specifies that any claims held by creditors are resolved and do not survive confirmation. Article 1X.F bars claims against Debtors. Furthermore, the Plan contains releases of the parties Mr. Gomez sued, including Debtors, PRG and affiliates. Article IX.D

10. Mr. Gomez argues in response that Debtors are collaterally estopped from seeking relief because of a state court judgment. In the State Court Case no judgment was entered. The State Court ruled only on the form and content of Mr. Gomez's complaint.

11. Mr. Gomez also argues that the State Court had jurisdiction to determine the dischargeability of Mr. Gomez's claims. But, the "issuance of the bankruptcy discharge is a matter within exclusive federal jurisdiction. A state court that does not honor a bankruptcy discharge is, in effect, not honoring a federal judgment." *Pavelich v. McCormick, Poarstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 783 (B.A.P. 9th Cir. 1999). Any judgment obtained after a bankruptcy discharge is void *ab initio*. *Id.* at 781-82. In *Pavelich* the appellate panel framed and answered the issue as follows: "The key question is whether the bankruptcy court can enforce the discharge in the face of a contrary state court judgment. It can." *Id.* At 781. *Pavelich* further ruled that a bankruptcy court has "jurisdiction to entertain a collateral attack" in order to determine if judgment was void and jurisdiction to consider whether a party violated the discharge injunction under §§ 524(a)(1) and 524(b), respectively. *Id.* At 784.

12. Mr. Gomez, who Debtors properly served with all notices, failed to file a proof of claim for a claim that existed pre-bankruptcy and certainly prior to the Bar Date. Mr. Gomez's employment related claims pending before the Superior Court of California, indeed any and all claims against Debtors and PRG, are therefore dismissed and discharged. The Court will enforce the Plan injunction and enjoin Mr. Gomez from prosecuting the State Court Case. The Court will also enforce the releases awarded to Debtors and PRG and its affiliates, which remain in full force and effect.

Case 18-10834-KG    Doc 1012    Filed 09/13/19    Page 5 of 5

13. The terms and conditions of this Memorandum Order shall be immediately effective and enforceable upon entry, notwithstanding Rules 6004(h), 7062 and 9014.

14. The Court retains jurisdiction to hear and determine all matters arising from or related to this Memorandum Order.

15. Regarding sanctions which Debtors and PRG ask the Court to impose, although Mr. Gomez continued to press his lawsuit despite admonitions from Debtors' lawyers and their filings, it is also clear to the Court that Mr. Gomez believed that his position was correct. The State Court agreed with Mr. Gomez. While Debtors incurred large attorneys' fees, the Court will sanction Mr. Gomez the sum of $500 to make the point that Mr. Gomez's pursuit of the State Court Case was erroneous and to deter similar actions. However, enjoining Mr. Gomez from prosecuting the State Court Case alone is a large consideration.

SO ORDERED.

September 13, 2019

KEVIN GROSS, U.S.B.J.

-5-