IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VER TECHNOLOGIES HOLDCO LLC, *et al.*,[1] | ) Case No. 18-10834 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

Objection Deadline: **October 9, 2019 at 4:00 p.m. (prevailing Eastern Time)**
Hearing Date: **October 16, 2019 at 2:00 p.m. (prevailing Eastern Time)**

**REORGANIZED DEBTORS' MOTION TO ENFORCE THE AUTOMATIC
STAY AND THE INJUNCTIVE PROVISIONS OF PLAN AND
CONFIRMATION ORDER AND FOR SANCTIONS**

The Debtors, and through the merger effectuated via the Plan (as defined below), Production Resource Group Inc. and its subsidiary Production Resource Group, L.L.C. ("PRG"; together with the Debtors, the "Reorganized Debtor"), by and through its undersigned counsel, hereby files this motion (the "Motion") pursuant to sections 105(d), 362, 524, and 1141 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1015(c), 3020(d), and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Articles IX, X, and XII of the Plan, seeking entry of an order (the "Proposed Order"), in a form substantially similar to that annexed hereto as **Exhibit 1**, enforcing the Automatic Stay imposed by section 362 of the Bankruptcy Code (the "Automatic Stay") and the release and injunctive provisions (collectively, the "Plan Injunction Provisions") of the *Fourth Amended Joint Chapter 11 Plan of VER Technologies Holdco LLP and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 647-1 (the "Plan"), which was confirmed by the order of this Court entered July

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: VER Technologies HoldCo LLC (7239); CPV Europe Investments LLC (2533); FAAST Leasing California, LLC (7857); Full Throttle Films, LLC (0487); Maxwell Bay Holdings LLC (3433); Revolution Display, LLC (6711); VER Finco, LLC (5625); VER Technologies LLC (7501); and VER Technologies MidCo LLC (7482).

#8898464 v1 \016594 \0006

DOCS_DE:225481.1 71504/001

26, 2018 [Docket No. 647] (the "Confirmation Order") and for sanctions for the continuing willful violation of this Court's orders and the Automatic Stay. In support of the Motion, the Reorganized Debtor submits the declaration of Jérôme Scapoli, Counsel to the Reorganized Debtor (the "Scapoli Declaration"), annexed hereto as **Exhibit 2**, and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The VER bankruptcy cases are almost at an end. The Reorganized Debtor has resolved virtually all of the claims filed in these cases and is nearly in a position to make an $11 million distribution to unsecured creditors and close these cases.

2. However, before the Reorganized Debtor can end these cases, it must resolve one of a few final hurdles. The subject of this motion, Samuel Cretiaux ("Cretiaux"), was a party to an employment contract with Video Equipment Rentals ("VER"), one of the Debtors, dated October 26, 2010. Cretiaux had been a highly compensated member of senior management of VER in Europe.

3. Mr. Cretiaux violated the Automatic Stay provisions of the Bankruptcy Code and this Court's injunctions and orders by commencing an action against the Debtors and PRG outside of the United States in order to make an end run around the Plan and the Bankruptcy Code's distribution scheme. On the Petition Date, April 5, 2018, Cretiaux received an email, which he acknowledged receiving, wherein he was given actual knowledge of this bankruptcy case. Two months later, on June 6, 2018, Cretiaux, while he was still an employee of VER, commenced an action before Registry of the Industrial Tribunal from Bobigny in France (the "French Labor Court") against Full Throttle Films LLC, one of the Debtors and VER Holland BV, a non-debtor subsidiary located in Holland ("Foreign Proceeding"). Mr. Cretiaux asserted he was entitled to in excess of €1.3 million in damages and salaries asserting garden variety employment claims: bonus

claims, car allowance, expense reimbursements, and compensation. To the extent relevant, VER vigorously denies Mr. Cretiaux's claims.

4. Mr. Cretiaux's conduct is clearly part of a systematic scheme to avoid the distribution process in the Plan. The Reorganized Debtor and PRG have informed both Mr. Cretiaux and the French Labor Court multiple times that the Foreign Proceeding was in violation of (i) the Automatic Stay, (ii) this Court's *Final Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code, (II) Permitting the Debtors to Modify the Automatic Stay in their Sole Discretion to Proceed with Litigation or Contested Matters Commenced Prepetition, (III) Approving the Form and Manner of Notice, and (IV) Granting Related Relief* ("Order Enforcing Stay"), entered on May 4, 2018 [Docket No. 230], and (iii) the Plan Injunction Provisions. Mr. Cretiaux, however, has failed to abide by these provisions, or even acknowledge the case as a whole. Indeed, Mr. Cretiaux did not file a timely proof of claim in this case and despite being offered opportunities to do so, has refused to file a late claim in this case.

5. Both the French Labor Court and Mr. Cretiaux have all but ignored the serious violations of United States Bankruptcy law and this Court's orders, and have informed the Reorganized Debtor that that the matters were going to trial in France. The Reorganized Debtor and PRG are left with no recourse but to seek an order of this Court enforcing the Automatic Stay and the Plan Injunction Provisions and for sanctions for Mr. Cretiaux's continuing willful violations of the Automatic Stay and the Orders of this Court.

6. Given the forgoing, the Reorganized Debtor and PRG are constrained to seek an order of this Court (i) directing that Cretiaux comply with the stay and Plan injunction, and (ii) awarding sanctions for Cretiaux's continuous violations of same. Assuming this Court enters the

requested relief, the Reorganized Debtors will commence a proceeding in France seeking recognition of this Court's order in order to enforce the order overseas.[2]

## JURISDICTION

7.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the Plan, and the Confirmation Order. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

8.  The statutory predicates for the relief requested herein are sections 105(d), 362, 524, and 1141 of the Bankruptcy Code and Rules 1015(c), 3020(d), and 9007 of the Bankruptcy Rules.

9.  In addition, the Court has retained jurisdiction under the Confirmation Order and Article X.12–13 of the Plan to interpret and enforce the provisions of the Plan and to "issue injunctions, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan" and to "resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in the plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions." *In re Ver Technologies Holdco LLC, etc. al,* No. 18-10834 (KG), slip op. at 1 (Bankr. Del. Sept. 17, 2019), ECF No. 1012.

---

[2] The Reorganized Debtors are coming to this Court after unsuccessful attempts to convince Mr. Cretiaux to consensually dismiss the Foreign Proceeding, and unsuccessful attempts to have the French Labor Court dismiss the matter. The Reorganized Debtor comes to this Court as a last resort because despite best efforts to resolve the matter, the French Labor Court has scheduled it for trial in March 2020.

## BACKGROUND

10. On or around October 26, 2010, VER hired Cretiaux pursuant to an employment contract of the same date. Cretiaux was hired as Development Director for Continental Europe and Middle East.[3] Although Cretiaux's employment contract was with VER, a US company, he worked primarily in France. Most, but not all of the salary payments paid to Cretiaux were paid by VER's Dutch subsidiary, VER Holland BV, although certain payments continued to be made by VER.

11. The Debtors filed for bankruptcy under Chapter 11 of the Bankruptcy Code on April 5, 2018 ("Petition Date").

12. On the Petition Date, the Debtor's senior management sent an email to all employees, including Cretiaux, informing the employees of the bankruptcy. Cretiaux acknowledged receiving the email. Copies of the email and Cretiaux's response are attached hereto as **Exhibit 4**. The email directed employees to the Debtors' claims agent's website, which continues to be updated with information about these cases.

13. On May 4, 2018, the Court entered the Order Enforcing Stay.

14. On June 6, 2018, notwithstanding the existence of the Automatic Stay and the Order Enforcing Stay, Cretiaux commenced the Foreign Proceeding before the French Labor Court. There is no analog to the French Labor Court in the United States. It is a judicial body consisting both of judges and lay people with both employer representatives and worker representatives that solely deals with employment disputes. It first engages in conciliation conferences and then if those conferences are not successful, it holds a trial.

---

[3] A copy of the employment contract is annexed as **Exhibit 3**.

#8898464 v1 \016594 \0006

15. On or around July 26, 2018, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of VER Technologies Holdco LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 647]. On August 21, 2018, the Debtors' confirmed Plan went effective.

16. The Debtors' Plan contains clear and unambiguous provisions that (i) enjoin all parties with claims against the Debtors (such as Cretiaux) from continuing to prosecute such claims, and (ii) releases the Debtors and PRG from liability for any claims that could have been resolved through the Plan.

17. As set forth in more detail in the Scapoli Declaration, the Debtors have appeared at Conciliation Conferences (the equivalent of a status and settlement conference) in the Foreign Proceeding and explained the importance of, and requested that Cretiaux abide by, the Automatic Stay, Order Enforcing Stay, and the Plan Injunction Provisions. Notwithstanding these efforts, Cretiaux has continued to press the Foreign Proceeding (going so far as to now add PRG entities, with whom he never had an employment relationship, to his list of targets), and has refused to file a proof of claim. The Debtors even went so far as to offer to forgive these violations and permit a late filed claim. The Debtors' protestations have fallen on deaf ears, and the Debtors are now constrained to seek an order from this Court as a first step in enforcing its rights.

## RELIEF REQUESTED

18. The Reorganized Debtor seeks entry of the Proposed Order (i) enforcing the Automatic Stay and the Plan Injunction Provisions by prohibiting Cretiaux from continuing prosecution of the Foreign Proceedings or any other action to recover monetary claims against the Debtors, (ii) awarding sanctions for Cretiaux's refusal to dismiss the Foreign Proceedings,

including reasonable fees and costs incurred by the Reorganized Debtor in prosecuting this Motion, and (iii) awarding punitive damages for Cretiaux's bad faith conduct.

## BASIS FOR THE RELIEF REQUESTED

19. In the international context, Courts have long recognized that the success of a Plan of Reorganization is directly dependent on its ability to bind all creditors, regardless of their jurisdiction. "The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." *Victrix Steamship Co., S.A., v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987) (relying on global nature of restructuring proceedings in vacating attachment entered by United States court in contravention of Swedish bankruptcy).

20. Notwithstanding the clear bankruptcy policy, and the statutory mandate, Cretiaux has systematically attempted to evade this Court's process in order to make an end run around this Court's distribution scheme.

### Cretiaux Violated The Automatic Stay

21. Upon the commencement of a bankruptcy case, and through the effective date of the Plan, section 362 of the United States Bankruptcy Code generally enjoins all persons and governmental units from, among other things: (a) commencing or continuing any judicial, administrative, or other proceeding against any of the Debtors that was or could have been commenced prior to the Petition Date; (b) taking any action to collect, assess, recover, or otherwise enforce a claim against any of the Debtors that arose prepetition; and (c) acting to obtain possession of, or exercise control over, property of the Debtors' estates. *See* 11 U.S.C. § 362(a)(1), (3), and (6).

#8898464 v1 \016594 \0006

22. The automatic stay is a core protection for debtors, providing them with a "breathing spell from [their] creditors," which, in combination with other provisions of the Bankruptcy Code, is essential to the Debtors' ability to reorganize successfully. *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1033 (3d Cir. 1991); *see also Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("[the automatic stay] gives a bankrupt a breathing spell from creditors") (citation omitted); *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (same).

23. The automatic stay becomes effective immediately upon the filing of a bankruptcy case, and applies both in the United States and extraterritorially. *See, e.g., In re Soundview Elite, Ltd.*, 503 B.R. 571, 584 (Bankr. S.D.N.Y. 2014) ("U.S. law is clear that immediately upon the filing of the Debtors' chapter 11 petition, the U.S. automatic stay became effective, both in the U.S. and extraterritorially") (citations omitted). Given its fundamental importance to a debtor's reorganization, courts broadly construe the Bankruptcy Code's automatic stay provisions, which apply worldwide. *See, e.g., Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998); *Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L. Madoff Inv. Secs. LLC)*, 2012 WL 1570859 (S.D.N.Y. May 4, 2012) (upholding extraterritorial enforcement of the automatic stay and injunction barring foreign creditor's lawsuit); *In re NextWave Pers. Commc'ns. Inc.*, 244 B.R. 253, 271 (Bankr. S.D.N.Y. 2000) ("[t]he automatic stay is broadly written and broadly construed"); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996).

24. In order to ensure compliance with the automatic stay, and to ensure that parties outside of the United States respect the fundamental importance of the Stay, this Court entered the Order Enforcing Stay.

25.     There is no question that Cretiaux was aware of the Bankruptcy Case and that he violated the automatic stay. Two months after these cases were commenced, Cretiaux commenced the Foreign Proceeding against the Debtors and he continues to prosecute that action to this day.

### Plan Injunction Provisions

26.     Both Cretiaux and the French Labor Court have been repeatedly told that under the Debtors' Plan, Cretiaux is barred from taking any action relating to or arising from his employment by the Debtor by virtue of the Plan Injunction Provisions. These provisions are fairly standard in bankruptcy cases and expressly enjoin a creditor of the Debtors from suing the Debtors or their affiliates. Article IX.B of the Plan makes clear that any claims of any kind that were held by a creditor of the Debtors (i) is resolved for all purposes by the Plan, (ii) that the plan provides the sole mechanism for payment of any allowed claims, and (iii) and that no claims that could have been brought but were not, survive the confirmation of the Plan.[4]

27.     Article IX.F of the Plan bars any party with a claim against the Debtors from seeking any relief of payment from the Debtors or any affiliated party. The Debtors and their affiliates are released parties and exculpated parties. *In re Ver Technologies Holdco LLC, etc. al,* No. 18-10834 (KG), slip op. at 4 (Bankr. Del. Sept. 17, 2019), ECF No. 1012.

---

[4] Cretiaux commenced the Foreign Proceeding in violation of the Automatic Stay before the Debtors filed their Plan. Despite diligent searching, the Reorganized Debtor cannot demonstrate that Cretiaux received formal notice of the Plan from the Debtors, though it believes that he, like all employees, had actual notice of the Plan and the progress of the Bankruptcy Case from the Debtors intranet and internal communications. Consequently it is possible that Cretiaux did not have knowledge of the Plan Injunctive Provisions until he was notified of the Plan Injunctive Provisions at the first Conciliation Conference before the French Labor Court in October 2018, which was after the Effective Date of the Pan. However, to the extent that argument might have been made prior to the First Conciliation Conference, it would no longer be valid. Cretiaux has been advised of the Plan Injunction Provisions and nevertheless has persisted in his suit against the Reorganized Debtor and parties protected by the Plan Injunctive Provisions.

#8898464 v1 \016594 \0006

28. These same provisions enjoin suit against the PRG Entities which are affiliates of PRG, a released and exculpated party.[5] *In re Ver Technologies Holdco LLC, etc. al,* No. 18-10834 (KG), slip op. at 4 (Bankr. Del. Sept. 17, 2019), ECF No. 1012.

29. The effect of both the provisions of the Bankruptcy Code and the injunctive provisions recited above is that Cretiaux cannot proceed against VER on account of conduct that allegedly arose pre-Effective Date. It is a fundamental tenet of bankruptcy law that confirmation of a chapter 11 plan discharges a debtor from prepetition debts. Bankruptcy Code § 1141(d). Such a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under § 1141] as a personal liability of the debtor[.]" Bankruptcy Code § 524(a)(2); *see, e.g., N.J. Dep't of Envtl. Prot. v. IT Litig. Trust (In re IT Group, Inc.),* 339 B.R. 338, 342 (D. Del. 2006) (dismissing an administrative action because the agency's prepetition claim was enjoined by the plan injunction and confirmation order); *see also In re US Airways, Inc.,* 365 B.R. 624 (Bankr. E.D. VA. 2007) (failure by employee to file proof of claim in connection with discrimination claim fatal to recovery against the debtor). *In re Ver Technologies Holdco LLC, etc. al,* No. 18-10834 (KG), slip op. at 4 (Bankr. Del. Sept. 17, 2019), ECF No. 1012.

30. Moreover, any order of any court—including the French Labor Court—is void to the extent it fails to honor the discharge. *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich),* 229 B.R. 777, 781 (B.A.P. 9th Cir. 1999) ("By federal statute, any judgment of any court that does not honor the bankruptcy discharge is 'void' to that extent."). Specifically, a bankruptcy discharge "voids any judgment at any time obtained, to the extent that

---

[5] Rather than include and quote from the lengthy provisions of the Plan relating to Plan Injunctions and Releases in the body of this Motion, movant has organized and provided all of the relevant material in **Exhibit 5**.

#8898464 v1 \016594 \0006

10

such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(1)"). A void order would not be entitled to full faith and credit. *See Pavelich* at 782; *In re Ver Technologies Holdco LLC, etc. al,* No. 18-10834 (KG), slip op. at 1 (Bankr. Del. Sept. 17, 2019), ECF No. 1012.

31. The injunction that protects the Debtor also protects its affiliate VER BV, a wholly owned subsidiary of FAAST Leasing Inc., which is a wholly owned subsidiary of the Debtor and the PRG Entities. *See* Plan Article I.A.148 (Defined Terms and Rules of Interpretation). The definition of "Released Parties" includes the Reorganized Debtors and their affiliates and the PRG Entities.

32. In addition to the Plan Injunction Provisions, In accordance with Section IX.D of the Plan, Cretiaux has released the defendant parties on account of any claims of any kind that existed prior to the Effective Date ("Release") and therefore cannot prosecute the Foreign Proceeding against any of the defendants.

33. In his letter to the Labor Court, Cretiaux has added two of PRG's European subsidiaries as defendants based on what appears to be a successor liability theory. The Plan's Injunction contained in Article IX.F prohibits Cretiaux from taking any action against the PRG Entities, as affiliates, relating to or arising from Claimant's employment by the Debtor.

34. As discussed above, this Court's jurisdiction to enforce the provisions of the Bankruptcy Code's Automatic Stay extends extraterritorially and the Bankruptcy Court has "*in personam* jurisdiction over those who would take actions prohibited by the stay." *Sec. Investor Prot. Corp v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec., LLC),* No. 11 Civ. 8629 (JPO), 2012 WL 1570859, at *5 (S.D.N.Y. May 4, 2012). Section 105(a) of the

Bankruptcy Code further enables the Bankruptcy courts to exercise their equitable powers to enter injunctions with extraterritorial effect and to enforce those injunctions. *See id.*

35. Finally, unless and until this Court or an appellate court reversed the Plan Injunction Provisions, Cretiaux had to obey those provisions and injunctions or be liable for contempt. *See, e.g., Walker et al. v. City of Birmingham*, 388 U.S. 307 (1967).

36. As noted above, Cretiaux has been repeatedly warned that his conduct is violative of the stay and later the Plan Injunction Provisions. Cretiaux has shown a blatant disregard for this Court's process, and the French Labor Court has been completely indifferent to the Reorganized Debtor's assertion of how Cretiaux's behavior has violated the laws of the United States and the orders of this Court. Given the clear breaches to the Automatic Stay and Plan Injunction Provisions, the Reorganized Debtor respectfully requests that the Court enter an order specifically enforcing the Plan and Plan Injunction Provisions so that there can be no misunderstanding that these provisions apply to the Foreign Proceeding.

### Cretiaux Should Be Sanctioned For His Conduct

37. Willful violations of the automatic stay may give rise to a claim against the violator for damages. "[A] debtor injured by the 'willful violation' of the automatic stay 'shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.'" *In re Hawk*, 314 B.R. 312, 317 (Bankr. D.N.J. 2004).

38. "It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp. Gen. Motors Acceptance Corp.*, 337 F.3d 314, 320 n.8 (3d Cir. 2003) (internal citation omitted).

#8898464 v1 \016594 \0006

39. Cretiaux had actual knowledge of the filing. On April 5, 2018, all VER employees, including Cretiaux, were notified that VER had filed for bankruptcy. Cretiaux received a direct communication from the company's president, and Cretiaux acknowledged receipt of the email. Notification of the bankruptcy filing was further posted on VER's website. Notwithstanding the existence of the Automatic Stay, on June 6, 2018, some two months into these cases, Cretiaux filed the Foreign Proceeding seeking to avoid this Court's reach and blatantly disregarding the Automatic Stay.

40. At a minimum, then, the Debtor is entitled to its attorneys' fees in bringing this motion and in defending the Foreign Proceeding. These fees are substantial, in excess of $150,000 as of this date.

41. The Reorganized Debtor is also entitled to punitive damages, which are "appropriate where the stay violation was conducted in bad faith, with malice, or in a particularly egregious manner." *In re Froman*, 566 B.R. 641, 656 (S.D.N.Y. 2017) (citation and quotation marks omitted); *see also, In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir.1990) (finding punitive damages appropriate where there is "maliciousness or bad faith").

42. Here, Cretiaux's stay violations were coupled with a blatant disregard of these cases in an attempt to avoid the application of the Plan' distribution scheme.

43. Under the Bankruptcy Code, the sole mechanism for a creditor to receive a distribution from a debtor's estate is through the allowance of the creditor's proof of claim. *See* 11 U.S.C. § 502.

44. On or about May 4, 2018, this Court entered the *Order (i) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (iii) Establishing Amended*

#8898464 v1 \016594 \0006

13

*Schedules Bar Date and Rejection Damages Bar Date, (iv) Approving the Form of and Manner for Filing Proofs of Claim, (v) Approving Notice of Bar Dates, and (vi) Granting Related Relief* [Docket No. 224] (the "Bar Date Order"), which provides that any claimant who or which fails to file a proof of claim by June 8, 2018 ("Bar Date")—the last date established by the Court for the filing of proofs of claims—is forever barred from asserting any claim of any kind that arose prior to the Petition Date against VER. On May 9, 2018, the *Notice of Deadlines for the Filing of Proofs of Claim, Including Requests for Payment Pursuant to Section 503(b)(9) of the Bankruptcy Code* ("Notice of Bar Date") and a blank modified *Official Form 410 Proof of Claim* was served on all creditors.

45. The Bar Date Order specifically provides that if a proof of claim is not timely received, the party asserting that claim shall be "barred from asserting such claims" against the Debtor. *See* Bar Date Order at ¶7. Notice of the Bar Date was published in several papers in the United States.

46. There is no question Cretiaux had a claim in the bankruptcy case that he was required to file.

47. Cretiaux did not file a proof of claim. The Reorganized Debtor has given him ample opportunity to do so and has offered to accept a late-filed claim.[6] Cretiaux still refuses to file a proof of claim or even acknowledge the bankruptcy case. As a result of his failure to file a proof of claim, Cretiaux should be barred from any distributions.

48. In further blatant disregard of this Court's orders, Cretiaux filed the Foreign Proceeding in an attempt to obtain the very distribution that he is not entitled to under the Plan.

---

[6] The Reorganized Debtor cannot demonstrate that Cretiaux received the Notice of Bar Date from the Debtors' Claims Agent, and has for that reason offered to accept a late filed claim.

#8898464 v1 \016594 \0006

That this is a knowing and conscious disregard of this Court's jurisdiction is evident from Cretiaux's conduct. The Reorganized Debtor has taken every possible step to assist Cretiaux in remedying his conduct and ensuring he can share in the pool available to similarly situated creditors. In open court, the Reorganized Debtor informed Mr. Cretiaux that if he stopped the Foreign Proceeding, the Reorganized Debtor would allow him to file a late claim so that he could, upon allowance of that claim participate in the distributions to unsecured creditors.[7] Cretiaux has ignored this request and, instead, is continuing on his course of contemptuous conduct.

49.  As stated in the Scapoli Declaration, the Reorganized Debtors have made multiple attempts through the procedures available in the Foreign Proceeding to convince Mr. Cretiaux to voluntarily comply with this Court's orders by withdrawing the Foreign Proceeding and ceasing prosecution of any claim for monetary damages against the Reorganized Debtors and PRG to no avail. Mr. Cretiaux has been explicitly told in open court, that the continuation of the Foreign Proceeding violates the Automatic Stay and the Plan Injunction Provisions and further that he could be subject to monetary sanctions for the violation of these provisions.

50.  It is unfortunate that this motion is necessary, but given Mr. Cretiaux's conduct, the Debtors are requesting that the Court award punitive damages as a result of Cretiaux's stay violations and attempt to evade this Court's distribution scheme. Failure to grant this award would incentivize Cretiaux, and potentially other non-US creditors, to use similar tactics in an attempt to enhance their recoveries in Chapter 11 cases. Punitive damages are the only mechanism to prevent this conduct from continuing.

---

[7] Cretiaux's employment contract provides that it is governed under French law. The Reorganized Debtor is indifferent as to which court – this Court or the French Labor Court – determines the quantum of Cretiaux's claim and would be prepared to have the amount of the claim be determined by the French Labor Court provided Mr. Cretiaux agreed that his sole recourse for payment of the determined amount was to receive a distribution in accordance with the Plan.

#8898464 v1 \016594 \0006

15

## NOTICE

51. A copy of this Motion and a translation of this Motion (but not the exhibits) into French was served (i) via first class mail and express mail service to Mr. Cretiaux, (ii) by email, express mail service, and first class mail to counsel representing Mr. Cretiaux in the Foreign Proceeding, (iii) upon Mr. Cretiaux by a *huissier de justice* in accordance with Article 5 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters as adopted in France, and (iv) parties requesting notice pursuant to Bankruptcy Rule 2002. The Reorganized Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

52. No previous request for the relief sought herein has been made by the Reorganized Debtor to this or any other court.

**WHEREFORE**, the Reorganized Debtor respectfully requests that this Court enter an order substantially in the form of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: Wilmington, Delaware
September 23, 2019

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
pkeane@pszjlaw.com

- and -

#8898464 v1 \016594 \0006

17

Joseph T. Moldovan (*Pro Hac Vice*)
Robert K. Dakis (*Pro Hac Vice*)
David J. Kozlowski (*Pro Hac Vice*)
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Email: bankruptcy@morrisoncohen.com
      rdakis@morrisoncohen.com
      dkozlowski@morrisoncohen.com
*Co-Counsel for Production Resource Group and the Reorganized Debtors*

17

DOCS_DE:225481.1 71504/001